The opinion of the court was delivered by
Watkins, J.
The plaintiff claims damages in the sum of $2770, as having resulted to his property by the demolition of an old, and the subsequent erection of a new building by the defendants upon the adjacent premises, the plaintiff and defendants being proprietors of adjoining buildings on Baronne street, in the city of New Orleans, with a wall in common between them.
After issue joined and a trial by the judge, there was a judgment in favor of the defendants, rejecting the plaintiff’s demand with the following reservation, to-wit:
“ Reserving his right to claim for injury to the plastering and paper on the walls, and inconvenience caused by the rubbish and debris left on his premises by defendants, and the expense of the removal of same, as well as for rents lost by the unnecessary protraction of the work — all of his claims for these items being dismissed as of non-suit.”
From that judgment the plaintiff has appealed.
The following is taken from the brief of plaintiff’s counsel as a fair synopsis of his grounds for claiming damages, viz:
“The petition alleges substantially as follows:
“ ‘That Charles E. Fenner and Samuel Henderson, Jr., are indebted to plaintiff in the sum of twenty-seven hundred and seventy dollars, for this:
“ ‘ That plaintiff owns the three-story brick building, No. 15 Baronne street, in the city of New Orleans, and has owned it for many years past; that on or about March 20, 1893, the defendants, *1391 who own the premises adjoining those of petitioner on the upper or Common street side thereof, tore down and demolished the buildings standing upon their said premises, and proceeded to build upon the same a new five-story building, known as the Medical Building; that the new building was a much larger and heavier one than the one which had stood upon the premises belonging to defendants, and that, in the course of the construction of the new building, defendants tore down and destroyed the party wall separating the new building from that of petitioner, and built a new party wall of greater width, height and weight than the old one; that in the course of the destruction of the old party wall and the construction of the new party wall defendants and their employees, through their fault, negligence and want of skill and care, caused heavy damages to the building and premises of your petitioner, said damages being due to the insufficient shoring up, supporting and bracing of petitioner’s building while' the support of the party wall was removed, and also to the settling of the new party wall, either by reason of insufficient foundations or of other causes to petitioner unknown. The damages are alleged to consist of the destruction of all levels in petitioner’s building, causing cracks and fissures in the walls thereof, and the straining out of shape of the doors and window frames, so as to prevent the doors and windows from properly closing, the breaking of a large plate glass window in the front of the premises; the destruction and failure to rebuild a portion of the wall of petitioner’s building, and in many other items of damage too numerous to mention in the petition, but to be proved in detail at the trial. That in the party wall on petitioner’s side thereof were several flues which were improperly reconstructed. That in order to restore petitioner’s premises to the condition in which they were before the tearing down of the building of defendants it will be necessary to take down and rebuild the brick front thereof; to repair and reset all doors and window frames; to shore up the front of the gallery; to raise certain floors and joists so as to level the floors in the building; to repair the ceilings and the roof; to replaster a great part of the interior; to repair all pipes and drains in and about the premises, and also fireplaces and flues therein, and to make a great number of other repairs, to be more fully detailed at the trial.
“ ‘That the new party wall was constructed without any regard to *1392 petitioner’s rights, and that all those portions of petitioner’s premises adjoining the new party wall required a general overhauling and repairing. The defendants and their employees left petitioner’s premises in an almost uninhabitable condition for a period of four months, whilst they were tearing down and rebuilding the party wall, whereas it could easily have been torn down and reconstructed within a delay of three weeks, if defendants and their employees had exercised ordinary diligence in the premises, and that petitioner was compelled to allow a material reduction in rents to his tenants by reason of the unreasonable and negligent delays of defendants and their employees in the reconstruction of the party wall, and the consequent inconvenience and annoyance to which his tenants were subjected.
“ ‘ The plaintiff alleges that it will cost two thousand three hundred dollars to restore the building to its coudibion prior to the building of the party wall, and that the damages due to petitioner by reason of the unnecessary delay in the building of the party wall, and inconvenience to which his tenants were subjected, and the allowance made therefor by him to said tenants for the difference in time between the delay necessary to tear down and rebuild said party wall and the time actually consumed, amounts to the sum of one hundred and seventy dollars, and that the time which will be required to repair the premises and restore them to their former condition will be ahout two months, and that the rent value of the premises is one hundred and fifty dollars per month.’
“ The prayer is for the recovery of two thousand seven hundred and seventy dollars, with interest from judgment until paid.”
The defendant’s answer is prefaced with the following peremptory exception founded on law, to-wit:
That they are not answerable for the damages claimed, for this, to-wit:
That they had the legal right to build the larger and heavier building which they constructed on their property ás alleged in the petition, and to tear down the old party wall separating said new building from the building of the plaintiff, and to build a new party wall of greater width, height and thickness than the old one, necessary to support said new and heavier building; and that plaintiff was bound to submit to the loss and inconvenience resulting from the proper execution of said work.
*1393 That, in the exercise of said legal rights, they entered into a contract with a competent and trustworthy builder, to construct said new building, including the demolition and reconstruction of said party wall, and the restoration of the plaintiff’s building, all of which he bound himself to do in a proper and workmanlike manner; and that,they yielded up to said contractor and builder the entire possession and control of said premises and work, reserving to themselves no direction or control as to the manner of doing the work, or as to the persons whom he should employ therein.
That said builder was, in all respects, an independent contractor, and, if damages were caused, through his fault, negligence, want of care, or skill, he alone, is responsible therefor.
Reserving the benefit of said exception, they make the following answer, substantially, viz.:
That the aforesaid contractor and builder bound himself to shore up the roofs and floors of the adjoining properties, and take down the party wall, and old foundations, and excavate for the new; protect the interior of adjoining properties and their contents, by proper and sufficient uprights and weather-boarding; and after new walls are up, restore these properties, in every respect, as they were, before the shoring and taking away of their walls was commenced; and to execute the same in a true and workmanlike manner. That, by virtue of said contract, said builder and contractor is responsible to them for any damages they may be held liable for to the plaintiff by reason of his failure to comply therewith; and that should they be condemned to pay plaintiff damages by reason of any fault or negligence of said contractor, they are entitled to like judgment over against him in warranty.
Thereupon, said builder and contractor appeared and joined the defendants in their answer, and fully admitting his liability to them, and his obligation to hold them harmless in the premises, he waived any formal call or citation in warranty and voluntarily made himself a party to the suit, and, for answer to the plaintiff’s demands, plead a general denial.
He specially averred and represented, that before he touched the building of the plaintiff he, himself, made a very careful inspection thereof, and, also, caused a similar examination to be made thereof by others. That upon said examinations, it was ascertained that the building was old and in bad condition; that the front wall was rot *1394 ten and badly cracked in numerous places; and that the building’ was out of level and inclined toward No. 17 Baronne street.
He further averred that he caused a measurement to be made and found a depression of about three inches on that side. That he further ascertained, in the course of that investigation, that the doors' and windows were out of plumb. He further avers, that in tearing down the old party wall, he ascertained that it bad been built on an entirely improper and insufficient foundation, having nothing but a one-brick footing or projection, with a single plank under it as far back as the three-story wall extended; and, beyond that, no footing’ at all, save and except a single plank under the wall. That such a-foundation readily accounted for the sinking which had taken place in plaintiff’s building on that side.
He further represents, that when he began tearing down the party wall, he discovered that the front wall was insecure and in danger of falling when the support of the party wall was removed. That plaintiff informed him that the Oity Engineer’s office had condemned,, or was talking of condemning, the said front wall; and that he obviated the necessity of this by carefully bracing and tying the wall,, which would have been unnecessary if the wall had been sound. That by this means, he maintained the walls of plaintiff’s building until the new and solid walls of the new building were erected; and that he then securely attached them thereto, leaving them in a better condition and much more secure than they were before.
Said contractor further answering specially 'denies that the shoring up, bracing and supporting of plaintiff’s building were insufficient; but, on the contrary, he avers that the same were done in the best manner possible and with the greatest care.
He denies that the flues in the plaintiff’s building were improperly replaced after the new building was completed ; and specially avers, that he placed them exactly as they were before.
He avers that said party wall was built with all possible regard for the plaintiff’s rights, and°as rapidly as circumstances would admit— reciting in detail and with precision some of the occurrences that caused unavoidable delay.
He emphatically affirms, that no repairs were required in order to restore the plaintiff’s building to the condition it was in prior to the said work being commenced, and he avers that said building is in as good and, indeed, better condition than it was before said work was begun.
*1395 That, in addition, and although not bound to do so, and to avoid a lawsuit, he has offered, at his own expense, to do everything rea-sonable to satisfy the plaintiff’s complaint, but that his offers have all been declined. This extended analysis of the pleadings will more readily bring the testimony within proper bounds, and render same more easily comprehended.
It is well to observe that we find nothing in the record to justify us in disturbing the ruling of the judge a quo with respect to the reservations made in his decree.
In his reasons for judgment, he says:
“ It is claimed that defendants protracted the work unecessarily; that in consequence plaintiff’s tenants were disturbed, and to some extent dispossessed, and that he was compelled to grant commutations of rent to them. It is proved that some time was lost, by reason of the failure of defendants’ contractor to obtain material as needed. It is likewise proved that the contractor completed the work within the stipulated time and delivered the building.
“ It is testified by expert witnesses that the work was prosecuted and completed within a reasonable time. I am not prepared to decide presently that plaintiff can recover on this ground, and I deem it best to reserve plaintiff’s rights on this subject.
“ But it is proved that by reason of leaks and exposure the plastering and papering on the interior walls were injured and stained, also that plaintiff was put to some trouble and expense, in the removal of the debris of the work from the premises.
“ It is proved that allowance was made to Mr. Logan, a tenant,for new papering. The evidence leaves the exact dates and the-amounts in doubt. There was a fire about the middle of July, and the evidence indicates the other items as of date in October. The-insurance company made repairs and for damages to the roof the in-surance made reparation.
“I am inclined to think that plaintiff may have a meritorious-claim for some amount for injuries to the plastering and papering,- and also for expense incurred in removing the debris from his premises. I have studied the record and I regret that I find no data upon which to make even an approximate estimate. It was plaintiff’s duty to make his case certain.” These are the matters which are embraced in the reservations in the judge’s decree.
*1396 On the main issue, the gravamen of the plaintiff’s case is distinctly stated in the subjoined allegation of his petiti n, viz.:
“ That, in the course of the construction of the new building, defendants tore down and destroyed the party wall separating the new building from that of petitioner, and built a new party wall of greater width, height and weight than the old one; that in the course of the destruction of the old party wall and the construction of the new party wall defendants and their employees, through their fault, negligence and want of skill and care, caused heavy damages to the building and premises of your petitioner, said damages being due to the insufficient shoring up, supporting and bracing of petitioner’s building while the support of the party wall was removed, and also to the settling of the new party wall, either by reason of insufficient foundations or of other causes to petitioner unknown.”
That is to say, that in the course of the destruction of the old party wall, and the construction of a new one, defendants and their employees, through their fault, negligence and want of skill, caused damages to the plaintiff’s building in the particulars enumerated; and the petitioner then specified the cause of same to have been, first, in the “ insufficient shoring up, supporting and bracing of petitioner’s building, while the support of the party wall was removed,” and second, “ the settling of the new party wall, either by reason of •insufficient foundations, or of other causes unknown,”
All of these allegations are emphatically denied by the defendants, .and the contractor and builder.
As the charges and defences are common to both the defendants and the contractor, same may be taken together and disposed of.
The foregoing synopsis, and statement show this case to depend amost entirely upon questions of fact — both parties relying exclusively upon a single decision of this court, as solving the questions of law that are involved.
And unfortunately, as in many cases, there is a serious and, seemingly, irreconcilable conflict between the statements of the witnesses, which greatly embarrasses the court in arriving at an accurate and just conclusion as to the rights of parties.
The substantial facts, as detailed by the witnesses, are as follows, viz.:
William Fitzner, an experienced architect, states, as a witness for *1397 the plaintiff, that he made an examination of the plaintiff’s premises,prior to the construction of the new building of the defendants, and identified the annexed report, of date of March 7,1893, of his examination thereof to the plaintiff.

L. L. Levy, Esg.:

“ The undersigned have this day examined your building, No. 15-Baronne street, as to its condition, and report as follows:
“ The party wall between Nos. 15 and 17 Baronne street, is a 13-inch wall and is in good condition; there is one crack in the said party wall, in rear of the third story high part of building, which could be easily repaired.
“ The roofs of building (zinc and slate) are in good condition. The valley gutters and flashing of. roofs and down pipes are in good order.
“The width of your building between party walls is 19 feet 10' inches in clear; against party wall, between Nos. 15 and 17, are two chimneys with 5 feet 8 inches breast, and in rear one chimney with 4 feet 8 inches breast; the fireplaces are in good order, with grates,, fenders and blowers complete. The mantels are of iron. The floors-of first and second story of building are level; the floor of third story is one-half inch high at party wall between Nos. 15 and 17 Baronne street.
“ The party wall between 15 and 17 is furnished with ceiling stuff in-first story, and plastered in second and third story; the plastering, is furred out in rear of second story (at last room).
“ The front wall of your building is straight and plumb, and the-galleries are in good order.
“ Very respectfully, etc.,
(Signed) “ Wm. Fitznbr, Architect,
“Jos. O. Tibrnby, Carpenter.
“ New Orleans, March 7, 1893.”
The witness states that the said examination was made at plaintiff’s request, who accompanied him, stating as his reason for desiring the examination and report was, that the defendants intended to erect a new building, and he wished to know the condition of the building as it was then.
This witness testifies that he made another examination and report to the plaintiff on the 14th of October, 1893, after the new structure *1398 of the defendants was completed, and which is of the following tenor, viz.:
“ L. L. Levy, Fsg.:
“ According to your request, I have examined the three-story building, No. 15 Baronne street, to ascertain the damages sustained by the erection of adjoining new medical building, and now report as follows:
“ Front. — The front of building was badly damaged, cracked and torn up by the insufficient shoring, tieing and bracing during erection of new adjoining building, and has suffered additionally by the settling of same. The front of building is unsafe and ought to be rebuilt as soon as possible.
“ First story. — The store floor is three inches out of the level, the lowest part being on the side of new party wall. The board lining of new party wall is badly put up and left incomplete. The store ceiling is left incomplete under one of the upper chimneys, the jams of which are started too low and leaving a hole which is covered by a metal sheet.
“ Second story. — The floor is two and three-fourth inches out of the level, the lowest part being on side of new party wall; the skirting on the new party wall are badly fitted and left unpainted. The fireplaces are left without ash pans, fenders and blowers. The hollow spaces behind iron mantels are not filled in. The fireplaces, hearths are laid without solid bedding. The sill of front window nearest to new adjoining building is one and three-eighths inches out of level.
“ Third floor. — The floor is three and five-eighths inches out of level, the lowest part being at new party wall. The hollow spaces behind iron mantels are not filled in, and the grate flanges are not closely fitted to iron works of mantels. The sill of front window nearest to new adjoining building is one and five-eighths inches oat of level.
“ Sundries. — The zinc roof of rear building requires repairs; holes are visible therein, evidently made by falling bricks. The outside lining of rear wall is not properly flashed at point of junction with adjoining new building. The thirteen-inch brick fire wall at above-mentioned zinc roof was taken down, but not rebuilt in proper manner. The front roof down pipe is left incomplete. The joining and cementing of front at junction with new adjoining building is im *1399 properly done. The second-story front gallery floor shows one-half inch fall at end nearest to new building, and thiee and five-eighths inches fall at the other end.
“ In new party wall of fourth story of adjoining building are four window openings, and in fifth story of same are four windows and one twin window; all these windows have outside movable shutters attached. The front cornice side return of new adjoining building projects about two and one-half feet beyond outside face of new party wall.
“ The restoration of building No. 15 Baronne street will cost the sum of two thousand two hundred and ninety-six dollars.
•‘Respectfully submitted.
(Signed) “Wm. Fitzner, Architect.

“New 07-leans, October 14, 1893.”

On comparing the two reports, it will be observed that in the Jo7-77ier the party wall was stated to be in good conditition, with the exception of one crack of insignificant size, in the third story, and that the roofs, gutters, pipes, fireplaces, mantels, etc., were likewise, and that the floors of the first and second stories were level, and the front wall was straight and plumb, and the galleries in good order; while in the latter it is stated that the front of the building was badly damaged, cracked and torn up by the shoring, tieing and bracing of same during the erection of the new building; that the store floor is three inches out of level, the second floor two and one-half inches out of level, and the third floor is three and one-half inches out of level — all three of the floors inclining to the side next to the new party wall.
To supplement and confirm the correctness of these two reports, Fitzner, and Tierney, a carpenter, were interrogated, and we •extract the following from their testimony.
The former states, upon making an examination of the two reports, that they were substantially correct. In speaking of the condition in which plaintiff’s building was left at the completion of the defendant’s new building, he says, that the shoring was improperly done, pointing out that same was defective at the front corner where there was a large showcase. He says “ the front came right over and pulled it from the other building.” He says, that the defendant’s contractor, originally, put in one line of shoring, and, finding that insufficient, he put in another line, about one month afterward, *1400 finding it “ necessary to reinsure his first line of shoring.” He-says, that he ascertained that the floors were not level, by measuring them by means of a level.
That the front sill of the front window is thirteen inches out of plumb, and that the front gallery has scarcely any fall on one-end adjoining the new building. “ That,” he says, “is the difference between them. That shows the amount of settlement; that is, ‘ the settling down on that end; ’ that is the settling of the new building which has ‘ carried the gallery down with it.’ ”
On cross-examination, he states that, when first examined by him, “ the front wall was in good condition, * * * It did not bulge out. It was straight, and no cracks were visible, and (he) therefore concluded (that) the wall was in good condition.”
That, in his opinion, it will be absolutely necessary that an entirely new front wall should be constructed for the plaintiff’s building, and that the sides of the floors should be raised, so as to bring them up to a level. And he places the cost of the wall at about one-half of the damages claimed in this suit.
He states his theory to be “ that the new party wall caused a depression of the earth upon which (the) sleepers rested.”
“ Q. Mr. Fitzner, do you mean to say, that the fact that the floors of Mr. Levy’s building are out of plumb, is due to the settlement of the medical building party wall?
“ A. Most undoubtedly.
“ Q. If that party wall had settled to any appreciable extent, at all, would it not be evident in the medical building?
“A. No, sir; not in the medical building, none whatever. That is, if there was an unequal settlement it would; but it was an equai settlement,” etc.
The summary of ¿this witness’ examination is, that, on account of improper shoring of plaintiff’s front wall, it was practically destroyed and demolished, during the destruction, by the defendant’s contractor, of the old party wall, and the construction of a new one,whereby the cost of a new front wall will have to be incurred, which will equal one-half the total sum claimed in this suit; and that, on account of inherent defects in the construction of the new party wall, a settlement has taken place of the new building, which has produced a corresponding depression of the floors of the plaintiff’s building on the side adjoining the new party wall — all of which was- *1401 occasioned through the negligence, and want of due care and proper skill, on the part of the defendant’s contractor and his employees.
An experienced engineer testified “that when he made an examination of the plaintiff’s building before the construction of defendant’s new one, he found the building to be old, but in good order. The walls were reasonably vertical, and its condition, generally, was-a reasonably good one.
“ That, after the construction of the new building, he found that-the floors had settled; that is (they), were out of level, and the partition doors and door and window openings were more or less disturbed by the settlement.”- That is to say, “ the settlement of the-new party wall.”
But, this witness states, that the work of demolishing the old party-wall had been commenced before he made his examination, though-it was still standing; and he admits that “there were some cracks-visible.” That “ they were old cracks (which) had not increased' for some time;” and that, “ it was for that reason (he said) it was in reasonably (good) condition for an old wall.”
He admits that he made no actual measurements; “ not with an instrument (but) went through and used (his) eye in forming (his); conclusions.”
He states that he visited the new building while in the course of construction, and “ found the cracks in the building enlarged, and! some new ones opening; that the old ones had opened to some extent, and some new ones had started.”
“ Q. Did you consider it made any material difference in the efficiency of the walls for the purposes of that building (that is) this increase in the old cracks?
“A. Well, it impaired it of course; that is, it is not as good a wall, as it was before.”
Another witness for the plaintiff, while describing the condition of' the building of the plaintiff somewhat as those witnesses we have referred to had done, admits that the “ comparative condition of the-premises after the party wall had been built, and the work “ of restoring the premises had been done,” was equally as good as it was-“before the party wall was demolished.”
This witness was a tenant of the plaintiff, and occupied the premises in question as a place of residence both before and after the-erection of the defendant’s new building, paying sixty-fiv.e dollars; per month rent.
*1402 The plaintiff, as a witness in his own behalf, says that prior to the construction of the defendant’s new building, his own was “in good condition (and) nothing the matter with it; ” and that “the front wall was sound and solid.” That at present there are “ large cracks in the wall; some of them that you can put your hand in.”
Several other witnesses were interrogated in behalf of the plaintiff, whose testimony, in a general way, corroborates the statements of the witnesses we have referred to, in several particulars.
On the contrary, the contractor, his employees, and others declare that the shoring of plaintiff’s building was done in the very best possible manner, every possible pains and precaution having been taken therein.
The witnesses of the defendant, generally, state that the front walls of the plaintiff’s building were naturally defective by “ reason of great age.” That “the mortar was bad and the brick was bad.” That “they had no bond to it; ” and one of them says that, in fact, one “ could push them down.”
One witness explains “bond” to mean “the bricks lapping over -each other; ” and, that the absence of a bond is a defective wall.”
Another witness states that the foundation of plaintiff’s building \was very diminutive, about three feet in diameter or width.
The contractor of the defendant, as a witness, states that he made ■a careful examination of the premises before commencing the work of shoring up the walls of the adjoining premises, and found “the walls were old and cracked, and fissures running from about half way of the first floor gallery to the top; ” and that he “ found that the front wall was very old, and had considerable cracks.” That “the windows were considerably out of level, and the floors sagged •from front to rear in the centre — that is, from front to rear * * * ■.from the stairway on the down-town side,” etc.
That, “ in securing the front wall, owing to its rotten condition '(he) had to use extra shorings and extra clamps to (hold) the building up, in order to keep this front wall from falling out.”
That he “had to take extra precautions on account of the condition of the wall; (as,) ordinarily, the usual wall requires only ordinary shoring, but, in this case, extra shoring and clamping were required.”
He further explains, that he found the internal condition of plaintiff’s wall very bad, indeed.
*1403 That, “ in the first place, it was built out of red bricks of inferior character.” That “the bricks were soft; what (are termed) salmon bricks; and, when the walls were taken down, the bond, instead of one brick lapping over another, they run straight for, probably, a distance of four feet, which rendered no tie to the front, at all.”
He explains, that “ the effect would be in the settlement of the front wall;” that is, the settlement “would shore itself, without making any effect on the side walls.” That “there was not sufficient tie to keep the front with the side wall.”
In conclusion, the following may be taken as a fair summary of this witness’ testimony:
“ Q. Was (the plaintiff’s front wall) in as good condition when you left as when you began?
“A. In my judgment it was in better condition.”
And, without going into further details, we may quote the following as the substance of the proof with regard to the settlement .of the new building, viz.:
“ Q. Mr. Van Horn, does the Medical Buildings how signs of having settled, at all, since it was erected?
“ A. No, sir.
“ Q. What would you say, that it had, or had not settled, from •your examination of it?
“A. Well, there is a settlement always in it from the shrinkage of the mortar; but, it is so little, it amounts to no damage. Have been through the building several times, and examined the walls outside and the front wall and see no signs of cracks or fissures in the wall whatever, and judge from that there could not have been any’settlement amounting to anything whatever.
“ Q. If that building had settled appreciably would there be any (visible) effect on the sidewalk or Schillinger pavement in front?
“A. As a matter of course.”
Other witnesses substantially corroborate this witness’ statement, both in respect to the bad condition of the front wall of plaintiff’s building prior to the demolition of the old party wall, and as to the settlement of the defendant’s new building having been, practically, insignificant.
The whole testimony satisfies us that the complaint of plaintiff with regard to the negligence and want of skill and care on the part of the defendant, his contractor and. his employees in the manner *1404 in which they demolished and, subsequently, reconstructed the party wall is not made out.
But, that in so deciding, we do not found our opinion upon the theory that the plaintiff or his witnesses testified falsely, rather upon the idea that the defects in the front wall of the plaintiff’s building were latent and invisible upon superficial observation; hence the developments made in the course of the work presented an altogether different case from that which was, originally, supposed to exist.
Our conclusion is that the finding of fact by the judge a quo is, substantially, correct. We are of the opinion that the evidence fairly shows that the defendant’s contractor and his employees used every reasonable precaution in shoring up the plaintiff’s building before the work of demolishing the old party wall was commenced, and that in the course of the construction of the new party wall they were reasonably careful and circumspect in the manner in which they performed the work, and thus reduced the damage which the plaintiff as adjoining proprietor was bound to sustain to a minimum.
We are of opinion that the plaintiff carried the burden of establishing by a preponderence of proof, that it was through the negligence, carelessness or want of skill on the part of the defendant’s contractor and of his employees that the front portion of the plaintiff’s building was badly injured, as well as that the settling of defendant’s new building caused the floors of plaintiff’s building to incline toward the new party wall, to the plaintiff’s great detriment and injury.
And we are equally of opinion that he has failed to discharge that burden of proof on each of the foregoing propositions.
The law of this case, as applicable to the facts before us, is well stated in Heine vs. Merrick, 41 An. 194, and from which we have extracted the following, viz.:
“ In demolishing the old and building the new party wall, under the conditions fully proved in this case, the plaintiff exercised an absolute right conferred upon him by the law. Under the maxim ‘ Neminem liedit qui jure suo utitur,’ they were not bound to indemnify their neighbor for any inconvenience or injury necessarily occasioned by the exercise of the right. Such a work must neces - sarily incommode the neighbor. It can not be prosecuted without an entry upon and partial occupation of his premises. It must disturb his enjoyment and that of his tenants. It may giV e ground *1405 for the annulment of his leases, or for a diminution of rents. It may prevent the renting of his property. It may injure him in many ways. But so long and in so far as these injuries are inseparable from the exercise of the right, the neighbor is bound to submit to them and can claim no indemnity therefor. Such is the well settled jurisprudence of France under like codal provisions. 5 Duranton, No. 331; 11 Demolombe, No. 406; 2 Aubry & Rau, 322; 1 Pardessus, No. 174. * * * But, on the other hand, plaintiffs are responsible for any exaggeration of these necessary damages, which, by any diligence, they could have prevented. They were bound by every means in their power to reduce to a minimum the injury and inconvenience occasioned to their neighbor; to occupy his property to the least extent and for the shortest time consistent with the ex - ercise of their right, and to hasten by all practical means the completion of the wall and the restoration of the neighbor to the full enjoyment of his property.
“ They were, moreover, bound at their peril, to replace the neighbor, at the end of the work, in a position equal in every respect to that which he occupied in the beginning, and to furnish him with a wall fit and adequate to support his building without injury.”
In view of the evidence we feel safe in affirming, that all the requirements of the foregoing quotation have been fulfilled by the defendant, except and in so far as are enumerated in the reservations of the judge a quo.
Our learned brother of the District Oourt has given patient consideration to the law and evidence and has rendered a proper decree.
Judgment affirmed.